[Cite as *State v. Madden*, 2025-Ohio-4891.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                          |     |                                           |
|--------------------------|-----|-------------------------------------------|
| STATE OF OHIO,           | :   |                                           |
|                          |     | CASE NO. CA2024-10-125                    |
| Appellee,                | :   |                                           |
|                          |     | OPINION AND                               |
| vs.                      | :   | JUDGMENT ENTRY                            |
|                          |     | 10/27/2025                                |
| TOBY L. MADDEN,          | :   |                                           |
|                          |     |                                           |
| Appellant.               | :   |                                           |
|                          |     |                                           |
|                          | :   |                                           |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-12-1675

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Christopher J. Pagan, and Repper-Pagan Law Firm, for appellant.

**O P I N I O N**

**SIEBERT, J.**

{¶ 1}   Toby L. Madden appeals the judgment and sentence imposed by the Butler County Court of Common Pleas after being found guilty of purposeful murder, felony

murder, and two counts of felonious assault. On appeal, Madden asserts three assignments of error. First, Madden argues the trial court erred committed several errors when imposing a "repeat violent offender" ("RVO") sentence enhancement. Second, Madden asserts the trial court erred when it denied his request to represent himself at trial. Finally, Madden claims the trial court erred in permitting his daughter to remain in the courtroom as a victim's representative when she also testified at trial.

{¶ 2}   Upon review, we overrule each assignment of error and conclude: (1) the trial court properly imposed an RVO sentence enhancement; (2) the trial court correctly found Madden's request for self-representation to be "involuntary"; and (3) the trial court committed no error, plain or otherwise, in permitting Madden's daughter to be the victim's representative, remain in the courtroom, and to testify at trial.

## Background

{¶ 3}   In December of 2022, Madden was indicted for the murder of his girlfriend, Jane Smith,[1] whose body had 55 stab wounds. Madden pled not guilty to the charges. The pretrial proceedings were marked by the repeated withdrawal of appointed public defenders. In March of 2024, the trial court appointed Madden's sixth public defender and set trial for September 23, 2024.

{¶ 4}   At the beginning of September, Madden's attorney filed a motion to withdraw and to allow Madden to represent himself. During a lengthy hearing, the court discussed with Madden his right to and the benefits of having an attorney represent him at trial. Madden stated he understood these rights and benefits while also voicing various grievances he had with his appointed attorneys and with trying to review discovery.

---

1. Jane Smith is a pseudonym adopted for this opinion to protect the privacy of the victim and her family. *See State v. Cansler*, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.), *Supreme Court of Ohio Writing Manual* 115 (3rd Ed. 2024).

{¶ 5}   However, when Madden brought up the prospect of a continuance to evaluate his discovery and consult experts, the trial court made clear no continuance would be granted as the case had been proceeding for years and had been previously continued. When Madden stated he wouldn't have enough time to prepare without a continuance, the trial court asked Madden if he would like to withdraw his motion to represent himself. Madden replied "Yes, ma'am," and the trial court entered an order on September 16, 2023, memorializing Madden's withdrawal of his motion.

{¶ 6}   The matter proceeded to a jury trial as scheduled on September 23, 2024. Madden and Smith's daughter attended the trial as a victim's representative. Madden's counsel raised a non-specific objection to this, but the trial court found there would be little to no prejudice because she would be the first witness to testify. Nonetheless, trial court left the door open to further consideration of the matter should issues arise. Madden's counsel raised no further objection regarding her attendance. She was the first witness to testify and did not take the stand again during trial.

{¶ 7}   The jury returned guilty verdicts on all counts of the indictment. At sentencing, the State elected to merge the purposeful murder count with the other offenses for sentencing purposes as they were all allied offenses of similar import. R.C. 2941.25(A). The trial court imposed a sentence of 15 years to life in prison.

{¶ 8}   The State also introduced—without any objection from Madden—a 1988 sentencing entry from when Madden was 15 years old to prove his RVO status. That sentencing entry listed four violent offenses and four corresponding gun specifications, all within a single case number. Madden's counsel stated to the trial court, "I believe the RVO specification and any sentence on that would be discretionary as opposed to mandatory . . ." to which the trial court replied, "[a]ll right. All right." The prosecutor did not argue otherwise.

{¶ 9}    The trial court found Madden guilty of the RVO specification and sentenced Madden to a 10 year prison term consecutive to the underlying sentence for murder. The trial court stated it, "impose[d] the maximum of ten years because this offense was quite frankly so gruesome . . . [and Madden] is a danger to the public." The trial court did not state whether it imposed the RVO sentence enhancement in its discretion or as a matter of law.

{¶ 10}  Madden's appeal followed.

**First Assignment of Error – RVO Sentence Enhancement**

{¶ 11}  In his first assignment of error, Madden asserts the trial court erred in multiple respects when the trial court convicted him of the RVO and imposed an "unlawful" RVO sentence enhancement of 10 years. We disagree.

*Standard of Review*

{¶ 12}  When reviewing the imposition of a felony sentence, this court must determine whether the sentence is "contrary to law." R.C. 2953.08(G)(2)(b). If the sentence is contrary to law, or the trial court failed to make required findings, appellate courts have the ability to "increase, reduce, or otherwise modify [the] sentence." *Id*. at (G)(1).

*RVO Specifications and Sentencing*

{¶ 13}  An RVO, as pertinent to this appeal, is a person being sentenced for aggravated murder or murder who has previously been convicted of a qualifying violent felony offense. *See* R.C. 2929.01(CC)(1), (2). To impose any RVO sentence enhancement, the underlying indictment must have included an RVO specification. R.C. 2941.149(A). Moreover, the determination of whether a person is an RVO is made by the sentencing court, not the jury, and the trial court must state its reasoning for imposing an RVO sentence enhancement. R.C. 2941.149(B). Depending on the circumstances of the

case, the imposition of an additional prison term (of one to ten years in one-year increments) to an RVO's sentence may be either discretionary or mandatory. *See* R.C. 2929.14(B)(2).

*Discretionary RVO Sentence*

{¶ 14} In summary, Ohio law gives the trial court discretion to impose an additional prison term upon RVOs when:

> (1) the defendant is convicted of an RVO specification;
>
> (2) the defendant is currently convicted of a violent felony of the first or second degree (including murder) or a violent felony in the second degree;[2]
>
> (3) the court imposed the maximum prison term (but not life imprisonment without parole) or longest minimum term for the offense;
>
> (4) the court finds that the prison terms imposed are "inadequate to punish the offender and protect the public from future crime" after considering and weighing statutory factors assessing the defendant's likelihood of recidivism (R.C. 2929.12); [ the "Inadequacy Findings"] and
>
> (5) the court finds that the prison terms imposed are "demeaning to the seriousness of the offense," after considering the same statutory factors considering and weighing the seriousness factors of R.C. 2929.12. [the "Demeaning Findings"].

*See* R.C. 2929.14(B)(2)(a) (the "Discretionary RVO Enhancement").

*Mandatory RVO Sentence*

{¶ 15} The trial court *must* impose an additional prison term upon an RVO when:

> (1) the defendant is convicted of an RVO specification;
>
> (2) the defendant was convicted of three qualifying violent offenses in the preceding 20 years (with offenses committed

---

2. For a violent felony of the second degree, there must be a finding that the offense involved an attempt to cause or threaten serious physical harm to a person or actually resulted in that serious physical harm. R.C. 2929.14(B)(2)(a)(ii).

simultaneously, constituting only a single offense);[3] and

(3) the defendant is currently convicted of a violent felony of the first or second degree (including murder) or a violent felony in the second degree.[4]

*See* R.C. 2929.14(B)(2)(b) (the "Mandatory RVO Enhancement").

*Analysis*

{¶ 16} Madden argues three specific issues regarding the trial court's imposition of a RVO sentence. We will discuss each in turn.

{¶ 17} *Issue 1*: Madden asserts his RVO sentence was improper because the trial court did not specify whether it was imposing a Discretionary RVO Enhancement or a Mandatory RVO Enhancement. We disagree the trial court needed to make such a specification.

{¶ 18} First, Madden cites no statute or authority requiring the trial court to state whether its imposition of an RVO sentence enhancement was mandatory or discretionary, and the relevant statutes cited above do not require such findings. This court will not rewrite a statute to "say something it does not." *State v. Babyak*, 2020-Ohio-325, ¶ 13 (12th Dist.). Second, Madden's prior conviction supporting the RVO specification occurred in 1988. The Mandatory Enhancement Statute requires three qualifying convictions in the preceding 20 years. R.C. 2929.14(B)(2)(b)(ii). Convictions from 1988—34 years prior to the murder—could never support a mandatory RVO enhancement. Third, Madden's trial counsel stated at sentencing that an RVO sentence enhancement would be discretionary and did not object or ask for clarification when the trial court did

---

3. Such offenses are "[a]ggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree . . ." R.C. 2929.01(CC)(1)(b).

4. The same "serious physical harm" findings discussed in fn. 2 also apply here. R.C. 2929.14(B)(2)(b)(iii).

not specify during sentencing whether the enhancement was discretionary or mandatory.

{¶ 19} We therefore conclude the trial court did not err in imposing a Discretionary RVO Enhancement.

{¶ 20} *Issue 2*: Next, Madden argues the trial court engaged in impermissible judicial fact-finding when imposing his RVO enhancement by stating Madden's crime was "quite frankly so gruesome . . . [and Madden] is a danger to the public." Madden argues the trial court was constitutionally *prohibited* from making these findings.

{¶ 21} Ohio's Supreme Court previously held the Inadequacy and Demeaning Findings involved unconstitutional judicial fact finding in violation of an offender's Sixth Amendment right to a jury trial. *State v. Foster*, 2006-Ohio-856, ¶ 99. The Supreme Court therefore ordered these provisions be severed from the statute and that "[a]fter the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent- offender and major-drug-offender specifications." *Id*.

{¶ 22} However, the Supreme Court of the United States abrogated *Foster*, in part, by holding the Sixth Amendment does not inhibit States from requiring judges, rather than to juries, to make certain factual findings before imposing consecutive sentences for multiple offenses. *Oregon v. Ice*, 555 U.S. 160, 171 (2009). The Ohio Supreme Court has since held, "when designating an offender as a repeat violent offender . . . a trial court does not violate the Sixth Amendment by considering relevant information about the offender's prior conviction that is part of the judicial record." *State v. Hunter*, 2009-Ohio-4147, ¶ 38

{¶ 23} Regardless of any confusion stemming from the Discretionary RVO Enhancement  and case law, we conclude the trial court did not make any impermissible findings when it imposed an RVO sentence enhancement. The statute specifically grants the trial court the authority to exercise discretion when deciding how long the sentence

enhancement will be. R.C. 2929.14(B)(2). Judges exercise this kind of sentencing discretion in many cases, and apply the same standards found in the Inadequacy and Demeaning Findings when they do. This kind of exercise of discretionary authority to determine a specific sentence within a range of available options is not unconstitutional "judicial fact-finding." Upon review, it is evident that the trial court considered Madden's risk of recidivism and the seriousness of his crime to explain why it imposed the *maximum* RVO sentence, not to justify why it decided to impose an RVO sentence enhancement in the first place.[5]

{¶ 24} Issue 3: Finally, Madden argues within his first assignment of error there was insufficient evidence to show that a juvenile court relinquished jurisdiction to an adult court for the 1988 conviction that served as the basis for his RVO sentence enhancement. In support, Madden cites a prior decision from this court upholding the imposition of an RVO sentence after finding, among other things, "that the [S]tate presented sufficient evidence . . . the Kentucky juvenile court relinquished its jurisdiction" over the appellant's case and that he was tried and convicted as an adult. *State v. Sargent*, 126 Ohio App.3d 557, 564 (12th Dist. 1998). Madden asserts his RVO sentence enhancement is improper because the trial court made no such finding here.

{¶ 25} However, the *Sargent* court based its analysis on a prior version of the relevant statutes. At the time of the appellant's underlying offense, the trial court could use a conviction when the defendant was a juvenile in support of an RVO sentence enhancement if "the juvenile court in which the person was adjudicated a delinquent child made a specific finding that the adjudication should be considered a conviction for purposes of a determination in the future pursuant to this chapter as to whether the person

---

5. In fact, the trial court expressly stated it relied on Madden's prior conviction when deciding whether to impose a sentence enhancement at all.

is a repeat violent offender." 1995 Am.Sub.H.B. No. 445.

{¶ 26} Today's definition of RVO, however, does not contain this language. *See generally*, R.C. 2929.01(CC). Neither does the RVO sentence enhancement statute. *See generally*, R.C. 2929.14(B)(2). In fact, "a court may consider the judgment rendered and the disposition of a child under that judgment for purposes of determining whether the child, for a future criminal conviction or guilty plea, is a repeat violent offender, as defined in [R.C. 2929.01]. R.C. 2151.357(H). Ultimately, nothing in the current versions of the relevant statutes leads us to conclude that there are any special requirements, including a juvenile court "relinquishing" its jurisdiction of a juvenile defendant to an adult court, for a conviction to serve as the basis of determining whether a defendant is an RVO. We cannot (and will not) override the General Assembly's legislative choice by "judicial fiat" to make any such requirement. (Cleaned up.) *See State ex rel. Mobley v. Franklin Cty. Bd. of Commrs.*, 2023-Ohio-3993, ¶ 13.

{¶ 27} Madden's first assignment of error is overruled in its entirety.

**Second Assignment of Error - Request for Self-Representation**

{¶ 28} Next, Madden asserts the trial court erred in denying his "unequivocal" desire to represent himself at trial. Criminal defendants have a constitutional right to represent themselves. *State v. Jones*, 2025-Ohio-1780, ¶ 11 (12th Dist.). However, appellate courts must look to "the totality of the circumstances" to determine whether a defendant "knowingly, intelligently, and voluntarily" decides to waive his or her constitutional right to an attorney and pursue self-representation. *Id.* at ¶ 13.

{¶ 29} Upon review of the record, we agree that Madden unequivocally stated his desire to represent himself—at least, that is—until the trial court made clear that a continuance of his jury trial, scheduled for later that month (and previously continued multiple times), would not be granted. At that point, Madden indicated that, in spite of his

criticisms of his appointed counsel, he wished to withdraw his request to represent himself. The trial court subsequently journalized an order memorializing Madden's withdrawal of his request to represent himself.

{¶ 30} Madden's argument on appeal ignores these critical facts, and they alone conclusively demonstrate that he "abandoned any intention to represent himself . . ." at trial. *State v. Beamon*, 2019-Ohio-443, ¶ 17 (12th Dist.).[6]

{¶ 31} We overrule this assignment of error.

### Third Assignment of Error – A Representative and Witness

{¶ 32} Finally, Madden argues the trial court erred in permitting his daughter, also the daughter of Smith, to be a victim's representative present at trial when she also served as the State's first witness.[7] Madden contends this amounted to "structural error," an error so "highly exceptional" that its "effects . . . are too difficult to measure" and "results in a trial that is fundamentally unfair." *State v. Montgomery*, 2022-Ohio-2211, ¶28-29.

{¶ 33} The Ohio Constitution, through what is commonly known as "Marsy's Law," provides criminal victims with the right to be present during criminal proceedings. *State v. Bai*, 2011-Ohio-2206, ¶ 137 (12th Dist.), citing Ohio Const., art. I, § 10(a); R.C. 2930.09; Evid.R. 615. To that effect, while a trial court may generally order the separation of trial witnesses "so that they cannot hear the testimony of other witnesses," a "victim" is expressly exempted from this. Evid.R. 615(B)(4). In addition, the Ohio constitution expressly states that a victim's representative "may assert the rights . . . afforded to the victim by law." Ohio Const., art. I, § 10a(B).

{¶ 34} Madden asserts that Ohio law "excepts a victim, but not a victim's

---

6. Both parties reference circumstances surrounding the withdrawal of Madden's previous five appointed attorneys, but we do not need to reach the import, if any, those facts had on Madden's motion to self-represent because the record establishes that Madden abandoned the motion.

7. Madden does not argue that his daughter was improperly designated as the victim's representative.

representative, from a [witness] separation order[,]" making the presence of his daughter in the courtroom as both a victim representative and a witness unlawful. However, a victim's representative is entitled to assert all rights afforded to victims under Ohio law—including the right to be present at trial.

{¶ 35} Madden also argues that *Montgomery* is analogous to this case. In *Montgomery*, the Supreme Court held that designating a victim as the *State's representative* and permitting her to sit at the prosecutor's table amounted to structural error because it "eroded the presumption of innocence accorded [to] Montgomery and violated his fundamental right to a fair trial" under the U.S. Constitution. *Montgomery*, 2022-Ohio-2211 at ¶ 25. The Supreme Court also observed that, "[t]he case before us . . . does not involve a challenge to the alleged victim's right to be present in the courtroom." *Id.* at ¶ 13. The *Montgomery* court found this distinction significant because while Marsy's Law (as well as Evid.R. 615[B][4]) may exempt "a victim from an order of separation and exclusion of witnesses, neither provision addresses allowing the victim to sit at the prosecutor's table as the [S]tate's designated representative." *Id.* at ¶14. As a result, the trial court found these provisions inapplicable to the question at hand. *Id.*

{¶ 36} *Montgomery* is easily (and significantly) distinguishable from this case. Madden's case *does* involve a challenge to the victim (and by extension the victim's representative) to be present in the courtroom. The plain language of Marsy's Law granted Madden and Smith's daughter the same rights as Smith—including attending the trial and being exempted from the trial witness separation evidentiary rule. Moreover, she was not seated at the prosecution table at trial.

{¶ 37} We therefore conclude the trial court did not err (structurally or otherwise) in allowing the daughter to be present at trial.

{¶ 38} Madden's final assignment of error is overruled.

{¶ 39} Judgment affirmed.


PIPER, P.J., and M. POWELL, J., concur.


---

# J U D G M E N T   E N T R Y


The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Robin N. Piper, Presiding Judge


/s/ Mike Powell, Judge


/s/ Melena S. Siebert, Judge


- 12 -